1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

J & J SPORTS PRODUCTIONS, INC.,

          Plaintiff,

    v.

MENERVA HERNANDEZ,

          Defendant.

Case No.  12-cv-05773-JST

**ORDER GRANTING DEFAULT JUDGMENT**

Re: ECF No. 15

Plaintiff J & J Sports Productions, Inc. ("Plaintiff") brings a motion for default judgment against Defendant Menerva Hernandez, individually and doing business as El Milagro Restaurant ("Defendant").  Notice of Application and Application for Default Judgment by the Court ("Motion"), ECF No. 15.

The Court heard this matter on June 6, 2013.  Attorney Thomas Riley appeared for Plaintiff, and neither Defendant nor any representative of Defendant appeared.  After considering the papers and the arguments made by counsel at the hearing, and good cause appearing, the Court hereby GRANTS the motion and awards damages as described herein.

**I.      BACKGROUND**

**A.      Factual Background**

Plaintiff alleges that on November 11, 2011, Defendant intercepted and rebroadcast the Manny Pacquiao v. Juan Manuel Marquez III WBO Welterweight Championship Fight Program ("the Program"), to which Plaintiff owns the exclusive commercial distribution rights.  Complaint, at ¶¶ 9-12, ECF No. 1.

Plaintiff alleges that Ms. Hernandez is an "an owner, and/or operator, and/or licensee, and/or permittee, and/or person in charge, and/or an individual with dominion, control, oversight

and management of the commercial establishment doing business as El Milagro Restaurant" in Seaside, California. Id. at ¶ 7. Plaintiff alleges that Defendant has not acquired a license to broadcast the Program. Declaration of Joseph M. Gagliardi ("Gagliardi Decl."), at ¶ 3; ECF No. 20. On November 11, 2012, Investigator Irene Calderon observed the Program being exhibited on three televisions at Defendant's commercial establishment. Declaration of Affiant, ECF No. 15-3 ("Calderon Decl."). Ms. Calderon recorded the capacity of the establishment as approximately 100 people, and she observed 26-30 patrons inside the establishment at various times during the broadcast. Id. She did not record observing mechanisms for transmitting a satellite signal. Id. The investigator also did not record there being a cover charge for the event, did not observe that the establishment increased the price of food of drinks during the event, and did not describe whether the defendant had promoted the event. Id.

**B.      Procedural History**

Plaintiff commenced this action on November 9, 2012, asserting four cause of action: (1) violation of 47 U.S.C. § 605 ("Section 605"), which prohibits unauthorized interception of "wire or radio" communications, (2) violation of 47 U.S.C. § 553 ("Section 553"), which prohibits authorized interception of cable broadcasts, (3) the tort of conversion, and (4) violations of California's "Unfair Competition Law," Cal. Bus. & Prof. Code § 17200, *et seq.* Complaint. The complaint was served on Defendant on February 1. ECF No. 10. Defendant failed to answer the Complaint by the required deadline and has not otherwise appeared. Declaration of Thomas P. Riley ("Riley Decl."), ECF No. 15-2, at ¶ 2. The Clerk entered default against Defendant on March 13. ECF No. 12. Plaintiff filed this motion for default judgment on March 19, seeking to recover judgment of $110,000 for the violation of 47 U.S.C. § 605 and $4,200 for the tort of conversion. Id. at ¶¶ 5 & 6.

**C.      Jurisdiction**

This Court has federal-question jurisdiction over Plaintiff's first two causes of action pursuant to 28 U.S.C. § 1331, since those counts arise under federal statutes. Since the remaining causes of action are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," the Court may, and hereby does, exercise

2

1    supplemental jurisdiction over those claims.  28 U.S.C. § 1367(a).

2    **D.      Legal Standard**

3           Rule 55(b)(2) of the Federal Rules of Civil Procedure permits a court, after entry of

4    default, to enter default judgment against a defendant.  "The district court's decision whether to

5    enter a default judgment is a discretionary one."  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir.

6    1980).  "Factors which may be considered by courts in exercising discretion as to the entry of a

7    default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of

8    plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in

9    the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was

10   due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil

11   Procedure favoring decisions on the merits."  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir.

12   1986).  "With respect to the determination of liability and the default judgment itself, the general

13   rule is that well-pled allegations in the complaint regarding liability are deemed true."  Fair Hous.

14   of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).

15          "A default judgment must not differ in kind from, or exceed in amount, what is demanded

16   in the pleadings."  Fed. R. Civ. Pro. 54(c).

17   **II.     DISCUSSION**

18   **A.      Default Judgment**

19          Since the Court takes the well-pled allegations of the complaint as true, the second, third,

20   and fifth Eitel factors weigh in favor of default judgment.

21          The first factor weighs in favor of default judgment because if the motion were denied, the

22   plaintiff would be without a remedy.

23          As to the fourth factor, the Eitel court upheld the denial of default judgment in part because

24   $2.9 million was at stake.  782 F.2d at 1472.  While the $114,200 sought in this case is a

25   significant amount, it is not an amount sufficient to weigh against granting a motion for default

26   judgment.

27          Defendant appears to have been validly served in this action, which has been pending for

28   six months.  Since there is no reason to believe that default was due to excusable neglect, the sixth

United States District Court
Northern District of California

1  Eitel factor also weights in favor of default judgment.

2      Finally, the final Eitel factor would seem to weigh against default judgment in every case.

3  However, when a defendant's inaction is the sole obstacle precluding a decision on the merits, the

4  factor must necessarily be of very little weight.

5      After careful consideration, the Court finds that the entry of default judgment is

6  appropriate.

7  **B.      Scope of Relief**

8      Plaintiff only seeks an award of damages on two of its causes of action: for the tort of

9  conversion and for the violation of Section 605.  Riley Decl., at ¶ 7.

10      **1.      Damages for Conversion**

11      In California, "[t]o establish . . . [the] tort [of conversion], a plaintiff must show

12  'ownership or right to possession of property, wrongful disposition of the property right and

13  damages.'" Kremen v. Cohen, 337 F.3d 1024, 1029 (9th Cir. 2003) (quoting G.S. Rasmussen &

14  Assocs., Inc. v. Kalitta Flying Serv., Inc., 958 F.2d 896, 906 (9th Cir. 1992)).  Under California

15  statute:

16      The detriment caused by the wrongful conversion of personal
    property is presumed to be:
17      First--The value of the property at the time of the conversion, with
    the interest from that time, or, an amount sufficient to indemnify the
18      party injured for the loss which is the natural, reasonable and
    proximate result of the wrongful act complained of and which a
19      proper degree of prudence on his part would not have averted; and
    Second--A fair compensation for the time and money properly
20      expended in pursuit of the property.

21  Cal. Civ. Code § 3336.  The factual allegations pled support a cause of action for conversion..

22  Plaintiff seeks conversion damages of $4,200.  In support, it has submitted evidence that the

23  commercial sublicense fee to display the Program is $2,200 for an establishment with a "minimum

24  seating" of "0-100," and $4,200 for an establishment with a "minimum seating" of "100-200."

25  Exh. 1 to Gagliardi Decl.    Presumably "minimum seating" really means "maximum capacity,"

26  but it still unclear what the fee is for an establishment with a maximum capacity of exactly 100.

27  Plaintiff's inspector recorded the "capacity" of the restaurant to be "approximately 100."

28  Calderon Decl.  After reviewing the photographs provided by Plaintiff, the Court finds that the

United States District Court
Northern District of California

4

maximum capacity of the establishment is likely to be less than 100.

Plaintiff's evidence therefore demonstrates its entitlement to $2,200 in damages for conversion.

### 2.   Damages under Chapter 5 of Title 47

Plaintiff has brought causes of action under two different sections of Chapter 5 of Title 47 of the United States Code.  Section 605 governs "communication by wire or radio."  This section applies to satellite broadcasts.  See, e.g., California Satellite Sys. v. Seimon, 767 F.2d 1364, 1366 (9th Cir. 1985).  Section 553, on the other hand, governs "communications . . . offered over a cable system."  47 U.S.C.A. § 553(a).  The two sections have different damages provisions.  Most notably for purposes of this motion, Section 605 permits a maximum statutory damages award of $110,000, while Section 553 permits a maximum of $250- $60,000.  Compare 47 U.S.C. § 553(c)(3)(A)(ii) & (c)(3)(B) with 47 U.S.C.§ 605(e)(3)(B)(iii) & (c)(ii).

### a.   Section 605 vs. Section 553

The Court is aware that some courts have awarded damages under both sections in issuing default judgment orders.  See, e.g., Joe Hand Promotions, Inc. v. Tidmarsh, Case No. 1:09-cv-00097 LJO GSA, 2009 WL 1845090, at *3 (E.D. Cal. June 26, 2009).  But other courts have held that, where a plaintiff provides no evidence that satellite technology was used, and an inspector did not observe a satellite dish on the premises, damages should be assessed only pursuant to Section 553.  See J&J Sports Productions, Inc. v. Juanillo, Case No. 3:10-cv-01801-WHA, 2010 WL 5059539, at *2 (N.D. Cal. Dec. 6, 2010).

Plaintiff's memorandum does not discuss why damages should be assessed under Section 605, except to say that it should not be prejudiced by Defendant's nonappearance, which is the main reason Plaintiff cannot discover the method through which Plaintiff intercepted the Program.  Memorandum of Points and Authorities in Support of Plaintiff's Application for Default Judgment ("Memorandum"), ECF No. 15-1, at 8:21-27.  That fact certainly should not prejudice Plaintiff in the sense of denying Plaintiff recovery.  The Court assumes that Defendant violated one of the two statutes, notwithstanding Plaintiff's inability to demonstrate all of the elements of its specific cause of action.  But in determining which of the two damages provisions to apply, the Court has

no basis to assume that Defendant used satellite technology.  While the Court accepts the truth of the well-pled factual allegations in the Complaint, the Complaint makes no specific allegations that Defendant used satellite technology, even after Plaintiff sent an investigator into Defendant's establishment to observe the broadcast.

The Court will therefore proceed to assess damages pursuant to Section 553, but it will consider the arguments made by Plaintiff in its memorandum and at oral argument as arguments to apply the maximum statutory award of $60,000.

### b.  Actual Damages vs. Statutory Damages

Plaintiff's first option under Section 553 is to recover "the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages."  47 U.S.C. § 553(c)(3)(A)(i).  As Plaintiff acknowledges, "[s]tatutory damages are appropriate where actual damages are difficult to prove."  Memorandum, at 9:21.  However, beyond an *ipse dixit* assertion that "it would be impossible to calculate the full extent of the profits lost . . . and the additional damages sustained . . . as a result of Defendant's unlawful actions," and despite Plaintiff's promise that it would discuss the issue more fully elsewhere in its memorandum, Plaintiff does not explain why it cannot calculate its actual damages to some rough degree of accuracy.  Id., at 9:25-27.  The Court considers this as a factor in deciding whether to exercise its discretion to assess statutory damages at all.

### c.  Statutory and Enhanced Damages

The alternative to actual damages is statutory damages of between $250 and $10,000.  47 U.S.C. § 553(c)(3)(A)(ii).  The Court also has discretion to assess an additional amount of no more than $50,000 "[i]n any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain."  47 U.S.C. § 553(c)(3)(B).[1]  This second category is often referred to as "enhanced damages."

Plaintiff has demonstrated that Defendant in all likelihood violated the law willfully and

---

[1] A similar structure exists in Section 605, with higher maximums.  See 47 U.S.C. § 605(e)(3)(C)(i) & (e)(3)(C)(ii).

6

for commercial advantage.  See Gagliardi Decl., at ¶ 9.  This satisfies a necessary condition for assessing enhanced damages, but it provides no guidance to the Court as to what amount of damages is appropriate.

In making that determination, courts typically consider whether the defendant establishment has charged a cover charge, whether the establishment increased the price of food of drinks during the event, whether the defendant has promoted the event, the number of televisions used and patrons served, and whether the defendant is a repeat offender.  See, e.g., J&J Sports Productions, Inc. v. Herrera, Case No. 1:10-cv-02090-AWI-SKO, 2011 WL 643413, at *4 (E.D. Cal. Feb. 17, 2011).  Plaintiff argues that the Court should ignore many of these factors, since in the opinion of its management defendants rarely increase their food and drink prices and usually advertise the event surreptitiously in order to avoid detection.  Gagliardi Decl, at ¶¶15-17.  Even if these facts are true, however, Plaintiff still provides no useful guidance about how egregious this particular defendant's offense was relative to others.  There is no evidence that defendant is a repeat offender, and Plaintiff has not argued that the number of televisions used or patrons served make this a particularly extreme case.[2]  At oral argument, Mr. Riley offered no further arguments about why this case deserved the maximum penalty beyond reminding the Court that that that penalty is available under the law.

In this district, the average award in similar cases comes nowhere near the statutory maximum.  See J&J Sports Productions, Inc. v. Concepcion, Case No. 3:10-cv-5092-WHA, 2011 WL 2220101, at *3 (N.D. Cal. June 7, 2011) (collecting cases and calculating average awards).  Plaintiff cites numerous cases awarding significant damage awards in similar cases, but in only two of those cases did the court award the maximum penalty Plaintiff seeks in this case.

---

[2] In fact, the available case law would suggest that it was not an extreme case.  Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc., Case No. 4:12-cv-64, 2013 WL 394000 (E.D. Va. Jan. 30, 2013) (broadcast shown on six televisions); Joe Hand Promotions, Inc. v. Tu Minh Nguyen, Case No. 10–CV–3504–LHK, 2011 WL 1642306 (N.D. Cal. May 2, 2011) (same); Joe Hand Promotions, Inc. v. SST Enterprises LLC, Case No. 4:11–1624–TLW–KDW, 2012 WL 2178820 (D.S.C. Apr. 3, 2012) (same) report and recommendation adopted, 2012 WL 2178708 (D.S.C. June 13, 2012).

Memorandum, at 18:20-19:2.  Plaintiff does not argue that those cases are comparable to this one. Id.

Especially in default judgment cases, courts rely upon counsel to act as an officer of the court and advise the Court not just of the damage awards their clients hope to receive, but also of the damages amounts that are appropriate relative to other similar cases.  The Court does not accept the suggestion that defendant's action in this case is unusually deserving of the maximum penalty under law.

The Court recognizes its obligation to effectuate Congress' intent in enacting these statutes: to deter commercial piracy.  It is for that reason that statutory damages are available to increase a plaintiff's recovery well above its actual damages.  The Court finds that an enhanced/statutory damages award in the amount of $2,200 - more than eight times the statutory minimum, and providing Plaintiff twice the value of its property - should be sufficient to serve as a punitive deterrent for a first-time violator.

III.    CONCLUSION

The Court hereby GRANTS Plaintiff's motion for default judgment.  Plaintiff will be awarded $2,200 in conversion damages, and $2,200 in statutory/enhanced damages under Section 553.  Judgment will be entered separately in favor of Plaintiff and against Defendant in the amount of $4,400.

IT IS SO ORDERED.

Dated:  June 6, 2013

_____
JON S. TIGAR
United States District Judge